# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JONG PIL REE,<br><br> *Plaintiff*,<br><br>v.<br><br>CITY OF CHICAGO, *et al.*,<br><br> *Defendants* | No. 22 CV 4284<br><br>Judge Lindsay C. Jenkins |

### MEMORANDUM OPINION AND ORDER

Plaintiff Jong Pil Ree ("Plaintiff") brings suit against the City of Chicago ("City"), Chicago police officers Tony Ramirez, Joseph Lopez, Peter Kontil, Gwendolyn Perez, and Brett Kim, and Chicago police detectives Jerad Tim, Emily Merida, Kelly Brogan, Marina Markopoulos, and Seung Cho (together, the "Individual Defendants") for allegedly arresting him unlawfully, fabricating evidence, and unlawfully detaining him in the Cook County Jail for over two years awaiting trial on charges that were ultimately dismissed.[1] This matter is currently before the Court on the City's motion to dismiss [Dkt. 38] and the Individual Defendants' motion to dismiss [Dkt. 37]. For the following reasons, both motions are granted, but Plaintiff is given until May 19, 2023 to file an amended complaint consistent with this opinion.

---

[1]   In its motion to dismiss, the City explains that "Plaintiff's complaint correctly names the star numbers, but not the names of Defendants Emily Merida (Emily Rodriguez), Marina Markopoulos (M. Markopoulos), and Brett Kim (B. LNU)." [Dkt. 37 at 4, n.1.] In this opinion, the Court will use the corrected names provided by the City.

## I. Background

The following facts are taken from Plaintiff's complaint [Dkt. 1] and assumed to be true for purposes of Defendant's motion to dismiss. *Roe v. Dettlebach*, 59 F.4th 255, 262 (7th Cir. 2023). Plaintiff is originally from North Korea and does not speak or understand English. [Dkt. 1, ¶¶ 12, 17.] On January 18, 2019, Plaintiff was arrested by members of the Chicago Police Department ("CPD") for allegedly committing the offense of predatory criminal sexual assault. [*Id.* ¶ 16.] Plaintiff denies committing the offense [*id.* ¶ 35] and takes the position that Defendants lacked probable cause for his arrest [*id.* ¶ 18]. Plaintiff alleges that at the time of his arrest, none of the arresting officers had a warrant for his arrest, none believed that there was a warrant issued for his arrest, and none had observed him commit any criminal offense. [*Id.* ¶¶ 29-31.] He further alleges that none of the arresting officers had received any information from any source that Plaintiff "had committed any criminal offense as it relates to the complaining witness." [*Id.* ¶ 32.]

Following his arrest, Plaintiff was interrogated. He was not provided with the services of a "qualified interpreter who was fluent in the Korean language." [*Id.* ¶ 19.] Plaintiff alleges on information and belief that "after arresting the plaintiff, the arresting officers and other members of the Chicago Police Department conspired and agreed to fabricate a story in an attempt to justify the unlawful arrest, and to cause the plaintiff to be wrongfully detained and prosecuted." [*Id.* ¶ 33.] In particular, Plaintiff alleges that "[o]ne or more of the arresting officers and detectives": (1) prepared police reports containing a false account of how and where Plaintiff was

2

placed under arrest; (2) "attested through the official police reports regarding the false account of the circumstances" of Plaintiff's arrest; and (3) "communicated the false narrative to the prosecutors," resulting in Plaintiff's alleged "wrongful prosecution for the crime he did not commit." [*Id.* ¶ 34.] Following the interrogation, Plaintiff was charged with three counts of aggravated criminal sexual assault (case no. 19CR240501). [*Id.* ¶ 20.]

On February 21, 2019, Plaintiff appeared before the presiding judge in the Cook County Circuit Court, Criminal Division. [*Id.* ¶ 21.] One week later, Plaintiff was formally arraigned and entered a plea of not guilty. [*Id.* ¶ 22.] Plaintiff was appointed an attorney from the Public Defender's Office to represent him. [*Id.* ¶ 23.] Plaintiff remained in the custody of the Cook County Department of Corrections for approximately two and a half years, until August 13, 2021. [*Id.* ¶ 25.] On that date, the prosecution moved to *nolle prosequi* all of the charges.

Plaintiff brings a seven-count complaint based on these allegations. The particulars of the counts are discussed in more detail below as necessary to resolve Defendants' motions. The first three counts are brought pursuant to 42 U.S.C. § 1983. Count I alleges that the Individual Defendants arrested and detained Plaintiff without probable cause in violation of the Fourth Amendment. Count II alleges a violation of the Due Process Clause of the Fourteenth Amendment based on the same facts. Count III is a *Monell* claim against the City. Plaintiff also brings state law claims against the Individual Defendants for malicious prosecution (Count IV) and intentional infliction of emotional distress (Count V), and against the City for

*respondeat superior* (Count VI) and indemnification under the Illinois Tort Immunity Act, 745 ILCS 10/9-102 (Count VII).

## II. Legal Standard

Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court "accept[s] all well-pleaded facts as true and draw all reasonable inferences in plaintiff's favor." *Id.* at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

"Ordinarily, when adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations of the complaint." *Financial Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022). If the Court considers "matters outside the pleadings," the "motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). However, "there is an exception under which a court may consider documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim" without converting the motion to dismiss into a motion for summary judgment. *Financial Fiduciaries*, 46 F.4th at 663. The purpose of this "incorporation-by-reference doctrine" is to "prevent[] a plaintiff

4

from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

III. Analysis

    A.    **The Individual Defendants**

Plaintiff brings suit against each of the Individual Defendants for false arrest and detention in violation of the Fourth Amendment (Count I), violation of the Due Process Clause (Count II), malicious prosecution (Count IV) and intentional infliction of emotional distress (Count V). The Individual Defendants move to dismiss all of the claims.

    1.    **Conceded Claims**

Plaintiff's counsel concedes that certain claims are subject to dismissal.[2] In particular, counsel concedes that Count I is time-barred to the extent it is based on Plaintiff's arrest (but not his detention). "The applicable statute of limitations for a § 1983 false arrest claim arising in Illinois is two years." *Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009) (citing 735 ILCS 5/13–202). Plaintiff's Fourth Amendment claim for false arrest accrued once Plaintiff was "detained … as a result of a lawful process"—in this case, arraignment. *Regains v. City of Chicago*, 918 F.3d 529, 533-34 (7th Cir. 2019); see also *Wallace v. Kato*, 549 U.S. 384, 390-91 (2007).

---

[2] In addition to the concessions made in his written brief [Dkt. No. 42], at the motion hearing held on April 12, 2023, Plaintiff's counsel confirmed his agreement that several counts in the Complaint must be dismissed. [Dkt. No. 51].

Plaintiff was arraigned on February 28, 2019 [Dkt. 1, ¶ 22], and filed his complaint more than two years later, on August 13, 2022.

Plaintiff's counsel also concedes that the claim for intentional infliction of emotional distress is time barred. "[T]he applicable statute of limitations for intentional infliction of emotional distress is two years, because the tort is a form of personal injury." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. Sup. Ct. 2003) (citing 735 ILCS 5/13–202). A "claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013) (citing *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006)). Plaintiff was arrested and taken into custody beginning on January 18, 2019 [Dkt. 1, ¶ 16], but did not file his complaint until nearly two and a half years later on August 13, 2022.

Lastly, Plaintiff's counsel concedes that, as drafted, Count II does not state a viable claim for a due process violation under the Fourteenth Amendment. "*Manuel I* makes clear that the Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention." *Lewis v. City of Chicago*, 914 F.3d 472, 475 (7th Cir. 2019) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 365-69 (2017)); see also *Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th Cir. 2020) ("A claim for false arrest or pretrial detention based on fabricated evidence sounds in the Fourth Amendment right to be free from seizure without probable cause.").

### 2. Probable Cause

When the conceded claims are dismissed, that leaves (1) Plaintiff's Fourth Amendment claim to the extent it is based on his allegedly unlawful detention and (2) his state law malicious prosecution claim. "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause," which "can happen when the police hold someone without any reason before the formal onset of a criminal proceeding" and "also can occur when legal process itself goes wrong— when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Manuel I*, 580 U.S. at 367. Although the Seventh Circuit "has not provided elements for a Fourth Amendment unlawful pretrial detention claim," "[t]he consensus among district courts" is that a plaintiff must show that the defendants (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor. *Bahena v. Kennedy*, 2021 WL 8153974, at *6 (N.D. Ill. Oct. 25, 2021) (collecting cases). Similarly, a claim for malicious prosecution under Illinois law requires proof that: "(1) [the plaintiff] was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury." *Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018).

The Individual Defendants argue that Plaintiff's Fourth Amendment unlawful detention claim and his Illinois law malicious prosecution claim must be dismissed

7

because a video recording of Plaintiff's interrogation by CPD officers shows that his arrest and pretrial detention were supported by probable cause.

The existence of probable cause is an "absolute defense" to both claims. See *Norris v. Serrato*, 761 Fed. Appx. 612, 615 (7th Cir. 2019) ("probable cause is an absolute defense to claims under section 1983 against police officers for an allegedly unreasonable seizure, whether a false arrest or a wrongful pretrial detention" (citing *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015)); *Wade v. Collier*, 783 F.3d 1081, 1085 (7th Cir. 2015) ("It is well established that the existence of probable cause forms a complete defense to a malicious prosecution claim [under Illinois law.]"); *Cannon v. Newport*, 850 F.3d 303, 306 (7th Cir. 2017) (same). "Probable cause to arrest exists if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013). "The officers' subjective intentions are irrelevant so long as there was probable cause to detain him for any crime." *United States v. Brown*, 973 F.3d 667, 706 (7th Cir. 2020). In other words, "[w]hat matters, and all that matters, is whether the facts known to the arresting officers at the time they acted supported probable cause to arrest." *White v. Hefel*, 875 F.3d 350, 357 (7th Cir. 2017).

According to the Individual Defendants, the interrogation video shows that Plaintiff admitted to having a minor female child with whom he was living bathe him on three separate occasions. Plaintiff allegedly admitted that during one of those occasions, his penis was erect and he let the child touch it. He also allegedly let the

8

child photograph his penis and gave her $20 when the bath was over. [See Dkt. 37 at 2.] The Individual Defendants maintain that these admissions established probable cause to arrest and charge Plaintiff with aggravated criminal sexual abuse, which requires proof that he "commit[ed] an act of sexual conduct with a victim who is under 13 years of age." [Dkt. 37 at 10 (quoting 720 ILCS 5/11-1.60(c)(1)(i).] "Sexual conduct" is defined as "any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused…for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/11-0.1.

According to the Individual Defendants, the Court can consider the recording, without converting their motion to dismiss into a motion for summary judgment, because the interrogation "is referred in the complaint and central to Plaintiff's claims." [Dkt. 37 at 4.] At the April 12, 2023 hearing in this matter, Plaintiff's counsel agreed that the Court could view the recording, but argued that dismissal was not appropriate because Plaintiff questions the accuracy of the translator's translations in the recording.

As noted in the "legal standard" section above, the incorporation-by-reference doctrine allows the Court to consider documents outside the complaint on a motion to dismiss, without converting the motion into one for summary judgment, if the documents are referenced in the plaintiff's complaint, are concededly authentic, and are central to the plaintiff's claim. *Financial Fiduciaries*, 46 F.4th at 663. The doctrine has been extended to video recordings. See *Brownmark*, 682 F.3d at 691

9

(stating in dicta that "it makes eminently good sense" to extend the incorporated-by-reference doctrine to "audio-visual works"); *Haligas v. City of Chicago*, 609 F. Supp. 3d 619, 625–26 (N.D. Ill. 2022) (considering police body-worn-camera footage on motion to dismiss, where footage was arguably central to some of plaintiff's claims); *Flores Delgado v. City of Chicago*, 547 F. Supp. 3d 824, 830-31 (N.D. Ill. 2021) (considering body-worn camera footage attached to the complaint in ruling on motion to dismiss). "When an exhibit," including a video, "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). However, if discovery is required to "authenticate or disambiguate" (*i.e.* clarify) the document, the court cannot decide the motion to dismiss based on that document unless it converts the motion into one for summary judgment. *Tierney*, 304 F.3d at 739.

The Court cannot reach the question of whether Plaintiff's statements established probable cause to arrest and charge him simply by reviewing the video. Throughout the recorded interrogation, Plaintiff (and at times Officer Lee), are speaking in a foreign language. Because of this, it is not possible for the Court to know what questions Plaintiff was asked, what answers Plaintiff gave, and whether those answers amounted to probable cause sufficient to sustain an arrest for aggravated criminal sexual abuse.

In their brief, the Individual Defendants purport to summarize what Plaintiff said during the interrogation. [Dkt. 37 at 2-3]. Using a string of timestamp citations, they generally describe what "the interrogator asked Plaintiff," and what "Plaintiff

10

admitted," presumably based on those portions of the recording that are in English. [*Id.* at 10]. But the brief does not *actually quote* any of the speakers, nor have Defendants provided the Court with a written transcript. Instead, the Individual Defendants pick and choose portions of the three-and-a-half-hour interview that would seem to support a probable cause finding, without providing any of the surrounding context.

Given this lack of foundation, even assuming the recording itself is properly before the Court on a motion to dismiss, Defendants' purported summary of Plaintiff's oral statements is not. At a minimum, the Court would need a transcript that includes an English translation of the interrogation that has been prepared by a person qualified to do so. See, e.g., *ABC Corp. v. Partnerships & Unincorporated Ass'ns Identified on Schedule A*, 2022 WL 18937941, at *1 (N.D. Ill. Dec. 19, 2022) (at TRO stage, plaintiff's Chinese-to-English translations of documents, created using an automatic translation service, were inadmissible under the "'well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation'" where "[t]here [wa]s no indication that anyone with knowledge of the Chinese language reviewed the computer-generated translations created by plaintiff's lawyer" (quoting *Heredia v. Americare, Inc.*, 2020 WL 3961618, at *5 (S.D.N.Y. July 13, 2020)); *Trapaga v. Central States Joint Bd. Local 10*, 2007 WL 1017855, at *8 (N.D. Ill. Mar. 30, 2007) (at summary judgment, striking for improper authentication "English-language versions" of affidavits that "appear to be translation of … Spanish language versions" of affidavits where

11

"neither contain[ed] any translator's verification or other indication that the testimony was accurately translated"); cf. Fed. R. Evid. 604 ("An interpreter must be qualified and must give an oath or affirmation to make a true translation.").

In short, without the ability to understand the words Plaintiff spoke in response to the questions he was asked, it is impossible for the Court to determine at this early stage that the video "incontrovertibly contradicts" Plaintiff's allegations. *Bogie*, 705 F.3d at 609. The video requires discovery to clarify (or in the words of *Tierney*, "disambiguate,") what occurred. 304 F.3d at 739. As such, the Individual Defendants have not established as a matter of law that the Officers had probable cause to believe that Plaintiff had committed the offense of aggravated criminal sexual abuse. See, e.g., *Flores Delgado*, 547 F. Supp. 3d at 830-31 (at the motion to dismiss stage, dismissal of Fourth Amendment excessive force claim based on police body worn camera video was inappropriate because the video presented an incomplete depiction of the incident); *Hyung Seok Koh v. Graf*, 2013 WL 5348326, at *10 (N.D. Ill. Sept. 24, 2013) (considering police interrogation video at motion to dismiss stage on § 1983 civil rights claims but denying motion where, viewed in the light most favorable to plaintiffs, the video "did not actually contradict the [plaintiffs'] complaint"). Therefore, the Court declines to dismiss Plaintiff's Fourth Amendment unlawful detention claim and Illinois law malicious prosecution claim based on the purported existence of probable cause.[3]

---

[3] Neither party affirmatively asks the Court to convert Defendants' motion to dismiss into a motion for summary judgment. Nor would that be prudent in this case. Defendants would not be entitled to summary judgment at this juncture based on the evidence they have

12

### 3. Group Pleading

The Individual Defendants make several secondary arguments in support of dismissing the unlawful detention and malicious prosecution claims. As to unlawful detention, the Individual Defendants argue that the claim is deficient because it uses "group pleading," identifying the Individual Defendants by name in only the caption and first paragraph of the complaint and then referring to them collectively throughout the body of the complaint. Plaintiff responds that group pleading is sufficient in this case, because "[w]hen the complaint is read sensibly and as a whole, [its] allegations are sufficient to place the defendants on notice of the claims against them." [Dkt. 42 at 8 (quoting *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013)).]

It is well established that section 1983 lawsuits against individuals "require personal involvement in the constitutional deprivation to support a viable claim." *Gonzales v. McHenry County, Illinois*, 40 F.4th 824, 828 (7th Cir. 2022); see also *Johnson v. Rimmer*, 936 F.3d 695, 710 (7th Cir. 2019). "To establish personal liability, the plaintiff must show that the relevant official 'caused the constitutional deprivation at issue' or 'acquiesced in some demonstrable way in the alleged constitutional violation.'" *Gonzalez*, 40 F.4th at 828 (quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)). Despite the personal involvement requirement, "[g]roup pleading, while not ideal, is not categorically impermissible" for a section 1983 claim. *Fulton v. Bartik*, 547 F. Supp. 3d 799, 810 (N.D. Ill. July 1, 2021); see also *Dukes v. Washburn*, 600 F. Supp. 3d 885, 898 (N.D. Ill. 2022). As

---

provided, and even if they were, Plaintiff would be entitled to discovery under Federal Rule of Civil Procedure 56(d) before the Court ruled.

Plaintiff correctly notes [Dkt. 42 at 8], the Seventh Circuit has allowed group pleading where, "reading the allegations sensibly and as a whole, there is no genuine uncertainty regarding who is responsible for what." *Engel*, 710 F.3d at 710.

The complaint in this case is insufficient to satisfy this minimal standard. It identifies the Individual Defendants only in the caption and first sentence and then never discusses them by name again. Perhaps the Court would be able to overlook the group pleading problem if the complaint alleged that each individual Defendant was jointly involved in each challenged act. Cf. *Engel*, 710 F.3d at 710 (complaint that referred to the two defendant police officers collectively was not insufficiently vague where they were "accused of acting jointly" and the complaint specifically alleged that the two defendants approached and threatened the plaintiff together and the "natural inference" from the complaint was that "the misconduct that followed during the investigation and prosecution was committed by these two as well."). But here, Plaintiff alleges only that "[o]ne or more of the arresting officers" prepared false police reports and "[o]ne or more of the arresting officers" communicated a false narrative to prosecutors, resulting in Plaintiff's "wrongful detention and prosecution for the crime he did not commit." [Dkt. 1 at 5.] Reading the complaint's allegations "sensibly and as a whole," and taking into consideration the additional information provided by the parties at the hearing in this matter, the Court is still left with "genuine uncertainty regarding who is responsible for what." *Engel*, 710 F.3d at 710.

Therefore, the Court will dismiss the Fourth Amendment unlawful detention claim, but grant Plaintiff leave to file an amended complaint. If each individual

Defendant was, in fact, involved in Plaintiff's arrest, interrogation, and/or prosecution, then it should not be difficult for Plaintiff's counsel to provide a few sentences about each Individual Defendants' alleged role in the unlawful detention—especially now that Plaintiff's counsel has a copy of the interrogation video.

### 4. Malicious Prosecution

The Individual Defendants move to dismiss the malicious prosecution claim on two additional grounds. First, they argue that Plaintiff fails to allege facts establishing that they acted with malice. Their "malice" argument is contingent on their "probable cause" argument: the Individual Defendants recognize that "[m]alice may be inferred from the absence of probable cause, if the circumstances surrounding the commencement of the criminal proceeding are inconsistent with good faith and if the absence of probable cause has been clearly proved," but argue that "the presence of probable cause proves fatal to Plaintiff's claim." [Dkt. 37 at 12.] For the reasons already discussed, this argument fails at the motion to dismiss stage because the Court cannot conclude whether Plaintiff's arrest and prosecution were supported by probable cause.

Second, they argue that the malicious prosecution claim must be dismissed because Plaintiff fails to plead that the criminal proceedings were terminated in his favor. Under Illinois law, "a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused." *Swick v. Liautaud*, 662 N.E.2d 1238, 1243 (Ill. Sup. Ct. 1996). "The abandonment of

15

the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Id.* (citing Restatement (Second) of Torts §§ 659, 660, 661 (1977)). To prevail, the circumstances surrounding the dismissed criminal proceeding must "compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 794 (N.D. Ill. 2013) (citing *Swick* 662 N.E.2d at 1243).

Here, the charges against Plaintiff were dismissed via a *nolle prosequi*. But according to the Individual Defendants, this is not indicative of innocence because a transcript of the relevant in-court proceedings indicates that investigators "made extensive efforts to locate the victim and her mother" but were "unable to locate them at this time." [Dkt. 37 at 13.] Assuming without deciding that the transcript is properly before the Court, dismissal of the malicious prosecution claim is not warranted at this stage of the case. Ultimately, it may be that the offered reasons for the dismissal are not consistent with innocence. But considering that the complaint alleges facts suggesting that probable cause to bring the charges was lacking in the first place, Plaintiff's allegation that the charges were "ultimately terminated in [his] favor]," are enough at the dismissal stage. [Dkt. 1 at ¶ 62.] *Woodard v. American Family Mut. Ins. Co.*, 950 F. Supp. 1382, 1387 (N.D. Ill. 1997) (at motion to dismiss

16

stage, complaint's allegation that underlying criminal action was judicially determined in plaintiffs' favor was sufficient to satisfy federal pleading standards; plaintiffs were not required to "plead facts which, if proven, would show that the dismissal was entered for reasons consistent with his or her innocence.")

### B. The City

Plaintiff brings three claims against the City. Plaintiff's claims for *respondeat superior* (Count VI) and indemnification under the Illinois Tort Immunity Act (Count VII) must be dismissed because they are dependent on Plaintiff's claims against the Individual Defendants, which are deficient for the reasons discussed above.

Plaintiff also brings a *Monell* claim against the City. A *Monell* claim challenges the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (2018). There are "three requirements to establish a *Monell* claim—policy or custom, municipal fault, and 'moving force' causation"—all of which "'must be scrupulously applied' to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022). As to the "policy or custom" element, the Seventh Circuit has recognized "three types of municipal action that can support municipal liability under § 1983: '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final

17

policymaking authority.'" *Id.* (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). In addition, inaction can also give rise to liability "if it reflects the municipality's 'conscious decision not to take action.'" *Orozco v. Dart*, -- F.4th --, 2023 WL 2801945, at *13 (7th Cir. Apr. 6, 2023)).

Plaintiff's *Monell* claim is based on an alleged "widespread practice." In particular, Plaintiff alleges that during the relevant timeframe, the City of Chicago and CPD had the following "interrelated *de facto* polices, practices, and customs" that resulted in Plaintiff being arrested, charged, and detained without probable cause: (1) "filing false reports and giving false statements and pursuing and obtaining wrongful prosecutions and false imprisonments on the basis of such reports and statements"; (2) failing to "properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers, particularly those who were repeatedly accused of wrongful imprisonments, malicious prosecutions and wrongful convictions and of making false reports and statements"; (3) "the police code of silence, specifically in cases where police officers refused to report or otherwise covered up instances of police misconduct, and/or the fabrication, suppression and destruction of evidence of which they were aware, despite their obligation under the law and police regulations to do so"; and (4) "covering up, suppressing and withholding exonerating, exculpatory, and/or other evidence favorable to criminal defendants." [Dkt. 1 at 8.]

The City moves to dismiss the *Monell* claim on several grounds, the first of which is dispositive for purposes of the City's motion to dismiss. The City argues that a claim for "*Monell* liability cannot survive without an underlying constitutional

18

violation by an individual defendant." [Dkt. 38 at 7.] Although the City overstates the governing rule, its conclusion is correct and the *Monell* claim must be dismissed due to Plaintiff's failure to adequately allege an underlying constitutional violation.

"The actual rule . . . is much narrower" than the rule set out by the City: "a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). To determine whether the City's liability is dependent on liability against its officers, the Court looks at "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.*; see also *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1080 (N.D. Ill. 2018).

In this case, the *Monell* claim is expressly premised on the Individual Defendants violating Plaintiff's constitutional rights: Plaintiff alleges that the "actions of defendants, as alleged above [in Plaintiff's Fourth Amendment and Due Process claims], were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Defendant City of Chicago and its Police Department." [Dkt. 1 at 7.] Put another way, the City's alleged *Monell* violations do "not proximately cause harm to the public in and of [themselves]" because "the harm itself only comes to fruition through an officer's affirmative actions," *Treadwell v. Salgado*, 2022 WL 267988, at *4 (N.D. Ill. Jan. 28, 2022)—namely the Individual Defendants' alleged acts of fabricating, manipulating, and altering evidence, making false statements and reports, giving false testimony, and pursuing Plaintiff's wrongful conviction [Dkt. 1, ¶ 48]. Imposing liability on the City under *Monell*, even when its officers are found

19

not liable, would create an inconsistent verdict. Therefore, Plaintiff's *Monell* claim against the City must be dismissed along with the § 1983 claims against the Individual Defendants. See *Williams*, 315 F. Supp. 3d at 1080-81 (there was no way that a jury could consistently find the city liable on a *Monell* claim without first finding the city's police officers liable for coercing false testimony from witness, creating false investigative reports, and withholding exculpatory evidence, since even if the city had a policy or practice of permitting such misconduct, the harm caused by such policies could only manifest itself through the officers' actions).

Given this resolution of the *Monell* claim, the Court finds it unnecessary to consider the parties' arguments concerning the sufficiency of the factual allegations supporting the *Monell* claim. However, Plaintiff's counsel would be well advised to keep the City's criticisms in mind when preparing an amended complaint and add additional factual detail to the extent it is available.

### IV. Conclusion

For these reasons, the pending motions to dismiss [Dkts. 37, 38] are both granted. Plaintiff is given until May 19, 2023, to file an amended complaint if he can do so consistent with this opinion. Defendants' answers are due on or before June 9, 2023. The matter remains referred to Judge Jantz for discovery supervision.

Enter: 22-cv-4284
Date: April 27, 2023

_____
Lindsay C. Jenkins
United States District Judge